# Burgos v. City of Philadelphia

*Charles Jay Schleifer*, for appellant.
*Linda S. Battistini, Bernadette Betzler, Theresa Young* and *Pauline J. Manos*, for appellees.

MAIER, *S.J.,* August 23, 2010—On July 2, 2007, Tony Burgos (appellant) filed a civil complaint against the City of Philadelphia, Philadelphia Gas Works, and PECO Energy Company (appellees) for damages caused when appellant was thrown to the street after the minibike which he was riding struck and was caught in an un-marked hole in the street. On May 19, 2010, this court issued its findings of fact and conclusions of law, ruling in favor of appellees. On May 25, 2010, appellant filed a post-trial motion. On June 14, 2010, this court denied appellant's motion. On June 21, 2010, appellant filed a notice of appeal to the Pennsylvania Superior Court. On July 12, 2010, this court issued an order pursuant to Pa.R.A.P. 1925(b) compelling appellant to file a state-ment of errors complained of on appeal. On July 19, 2010, appellant filed his 1925(b) statement, alleging the following:

"Did the trial court err as a matter of law, and abuse its discretion, in failing to determine that the defendant/

appellee City of Philadelphia is subject to liability pursuant to the 'utility' exception of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8542(b)(5), where (1) the city owns the sewer line system at issue, (2) a defect in a lateral portion of the sewer line system caused a dangerous cave-in on a street located within the city, (3) the city had notice of the dangerous cave-in as of June 21, 2005, (4) the city failed to barricade or fill the dangerous cave-in prior to plaintiff's incident of July 7, 2005, (5) the city allegedly notified the local homeowner to fix both the defective lateral and cave-in, but never followed up after the 10-day imposed deadline, (*i.e.*, by July 1, 2005), to ensure that repairs were made to either the lateral or street, (6) the city had no confirmation that the homeowner received said notice, (7) the city has an interest in ensuring the safety of its sewer system and streets located in the vicinity, (8) the Pennsylvania Department of Transportation (PennDOT) has no responsibility for repairing cave-ins on state highways located within city limits which are caused by defective underground utilities, and (9) the city never requested the PennDOT to take any remedial action, or followed up with PennDOT to determine if they had taken such action?" Appellant's statement of errors complained of on appeal.

## BACKGROUND:[1]

This court found that, on July 7, 2005, at approximately 1 p.m., appellant was operating his minibike adjacent to the curb along the outermost lane of north-

---

1. Upon discussing the case before this court prior to trial, the parties submitted a joint stipulation of facts. Accordingly, this court's findings of fact are not in dispute.

bound Roosevelt Boulevard in the City of Philadelphia, between 7th and 6th Streets. Roosevelt Boulevard is a state highway located within appellee's city limits.

Appellant was riding less than 12 inches from the curb to his right when the front tire of his minibike struck and got caught in an unmarked hole on the street in front of the property located at 630 Roosevelt Boulevard. The minibike flipped over, and appellant was thrown to the street. He sustained a pilon fracture to his right ankle which required a surgical open reduction and internal fixation, and the insertion of permanent hardware.

Charles Cooper was employed as a sewer maintenance crew chief II for appellee's Water Department on the date of appellant's incident. He supervised the work of employees in that division. On June 21, 2005, approximately two and one-half weeks prior to the incident, the city Water Department received notice that there was a "cave-in" on the street at 630 Roosevelt Boulevard. The information was entered into a computer system and onto a customer information display form. A city customer service inspector went to the scene and found a "cavity" at the curb side of the main sewer in that location. The matter was referred to the sewer maintenance division. This referenced "cavity" is the aforementioned hole in the street that caused appellant's minibike to flip.

On June 21, 2005, Charles Cooper went to the site and conducted a dye test which revealed a defective lateral at the property located at 632 Roosevelt Boulevard. He determined that dirt and water were leaking from the lateral, and that the cavity on the street had been caused by this defect. Information regarding the dye test and defective lateral were recorded on a sewer maintenance

sewer ticket that was signed by Charles Cooper. A sewer lateral is the pipe connection from an individual home to the main sewer line. The main sewer line is owned by appellee. A homeowner owns the sewer lateral, and bears the responsibility to repair a defective lateral line and make repairs to a street from any resultant damage.

According to the sewer maintenance sewer ticket, a notice regarding the defective lateral was served on the homeowner at 632 Roosevelt Boulevard. The notice consisted of a written document that was allegedly placed in the homeowner's mailbox. The written notice was prepared and served by John Spence, sewer maintenance crew chief I, who was present at the scene with Mr. Cooper. The City has no other record or copy of the notice. The notice instructed the homeowner at 632 Roosevelt Boulevard to obtain a registered plumber to excavate and repair the lateral within 10 days (*i.e.,* by July 1, 2005, which was one week prior to the incident). No barricade was left on top of the cavity site.

Mr. Cooper entered information regarding the dye test and notice to the homeowner at 632 Roosevelt Boulevard into the computer system, and onto the Philadelphia Water Department Customer Information display form. He also contacted someone at the PennDOT regarding the street cavity, but he could not recall the identity of that individual.

Charles Cooper never returned to the site after June 21, 2005. Mr. Cooper did not engage in any follow-up communication after June 21, 2005 with the homeowner at 632 Roosevelt Boulevard, the Streets Department, the Water Department, or anyone at PennDOT to deter-

mine if the sewer lateral defect or street cavity had been repaired within the 10 days. He never requested anyone at PennDOT to repair the cavity at 632 Roosevelt Boulevard.

On the date of appellant's incident, Stephen Weaver was employed as a highway construction engineer for appellee's highway division of the Streets Department. He determined that the Streets Department had not been notified about the hole in the street at 630 Roosevelt Boulevard and that the Streets Department has no records to indicate that they were notified about the hole in the street. According to Mr. Weaver, if the Streets Department discovers a hole in the street and suspects that it has been caused by an underground utility, then they will notify the relevant utility to investigate and determine if the hole was caused by a defect in the utility. If the hole was caused by a defect in the utility, then that utility would repair the hole and fill it back to ground level as a temporary fix to make it safe. Additionally, if the Water Department determines that a hole in a street was not caused by a defect in the utility, then the Water Department will refer the matter to either the Streets Department or PennDOT.

On the date of appellant's incident, Dave Betzner was employed as a construction inspector for Pennoni Associates, an engineering consulting company that provides services to PennDOT. His duties included inspecting state highways and roads within the City of Philadelphia, and investigating complaints regarding roadway conditions. On June 21, 2005, during the course of his daily drive-by inspections of Roosevelt Boulevard, he observed a hole in the street along the curb at 630

Roosevelt Boulevard in Philadelphia. A cone with the letters "PGW" stenciled on it was located at the hole. He determined that the hole was not a pothole, but rather a "cave-in." After determining from Philadelphia Gas Works (PGW) that PGW was not doing work at the site, Mr. Betzner notified appellee's Water Department of the cave-in.

On June 23, 2005, Charles Cooper notified Mr. Betzner by phone that he determined that a defective lateral caused the cave in at 630 Roosevelt Boulevard, and that a notice was provided to the responsible homeowner to make repairs. Mr. Betzner recorded information about the cave-in he observed on June 21, 2005 and the June 23, 2005 phone call from Mr. Cooper on a handwritten log of his daily inspection notes. Mr. Betzner did not have any further communications with Mr. Cooper after June 23, 2005.

Steve Niknam was employed as an assistant highway maintenance manager for PennDOT on the date of plaintiff's incident. His duties included supervising state highway maintenance activities. On June 21, 2005, Dave Betzner notified Mr. Niknam that he inspected a cave-in on the street at 630 Roosevelt Boulevard, and that he had notified Mr. Cooper of the cave-in. According to Mr. Niknam, PennDOT does not make repairs to holes on state highways, located within the City of Philadelphia, that are caused by underground utilities including water pipes, sewer lines, and laterals. If PennDOT becomes aware of a hole, cavity, or sinkhole on a state highway within the City of Philadelphia resulting from a defective underground utility, then PennDOT will instruct the city to correct the problem, or to contact the appropriate utility company to take such action. If PennDOT becomes

aware of a hole, cavity, or sinkhole on a state highway within the City of Philadelphia resulting from a defective sewer lateral owned by a property owner, then PennDOT will not take any measures to deal with the homeowner after they report the hole to the city. According to Mr. Niknam, a homeowner has a responsibility to hire a plumber to repair a defective lateral, and to repair a resulting hole in the street by backfilling it to street level as long as it is safe.

The parties agreed to submit the issue of liability to this court. Specifically, this court decided whether appellee was subject to liability pursuant to the "utility exception" and/or the "streets exception" of the Political Subdivision Tort Claims Act. The parties reached an agreement as to damages, which is dependent upon the decision of this court and/or the appellate court.

## APPELLEE IS NOT LIABLE UNDER THE "UTILITY" EXCEPTION OF 42 PA.C.S. §8542(B)(5)

Appellee is not liable under the "utility" exception of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8542(b)(5) as it was not responsible for the repair of the defective sewer lateral and ensuing cave-in. The pertinent exception is as follows:

"The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: (5) a dangerous condition of the facilities of steam, sewer, water, gas, or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable

risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition." 42 Pa.C.S. §8542(b)(5).

If the cave-in had been caused by a defective sewer main, or if the roadway had been one other than a state highway, it is conceivable that appellee would have been liable under this exception. However, upon review of the joint stipulated facts, appellee is not an appropriate defendant in this case and appellant's claim for negligence must fail.

To ascribe negligence to a named party, the defendant must owe a duty to the plaintiff and be in breach of that duty. *Merlini v. Gallitzin Water Authority,* 602 Pa. 346, 980 A.2d 502 (2009). In the case sub judice, appellee owes no duty to the appellant; appellant has not met his burden of proof that appellee is responsible for the repair of the defective sewer lateral or the repair of a state highway.

The parties agreed, as is made clear by the joint stipulation of facts, that the cave-in was caused by a sewer lateral, and not a sewer main. They likewise agree that a homeowner is responsible for the repair of a sewer lateral and the resultant damage to a street. Appellant has not shown that there is any further duty on the part of appellee than to notify the homeowner of the problem, which appellee did by way of written notice to the homeowner. This court simply cannot discern how, based on this set of facts, there is a disputable issue as to who may have owed a duty to appellant.

Moreover, the parties agreed that Roosevelt Boulevard is a state highway. This court notes that such a status automatically imputes liability onto the Commonwealth of Pennsylvania; appellee is not responsible for the maintenance, inspection, or repair of a state highway. This court also notes that appellee is not liable for the condition of a street once that street is adopted as a state highway. See *Hubbard v. PennDOT,* 660 A.2d 201 (Pa. Commw. 1995). Although appellant argued that PennDOT does not make repairs to its highways within the limits of the City of Philadelphia, he has failed to show how that is true in the face of the foregoing law.

For the abovementioned reasons, this court respectfully requests that its order dated June 14, 2010, which denied appellant's motion for post-trial relief, be affirmed.